[No. 3232-2.   Division Two.   April 18, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. JAROMIR
MACH, ET AL, *Appellants*.

*Victor V. Hoff*, for appellants.

*Grant S. Meiner, Prosecuting Attorney,* and *William
Knebes, Deputy,* for respondent.

PETRIE, J.—Following denial of their motions to suppress salmon seized on their respective commercial gill net boats, Jaromir Mach and Milos Falta were convicted in Clallam County District Court of unlawfully possessing gill net caught salmon during a closed season. Their appeals to Superior Court were consolidated for trial, and their convictions were affirmed. Upon appeal to this court, they concede that the fisheries patrol officers who boarded their vessels and who seized and confiscated their fish had ample reason to believe freshly caught salmon were on board in violation of the state fisheries code; they contend, only, that the statutory basis for warrantless seizure and confiscation of the fish, RCW 75.08.170, violates the fourth amendment to the United States Constitution. We affirm their convictions.

RCW 75.08.170 provides in part as follows:

The director [of fisheries] and any fisheries inspector or deputy inspector shall have the power to inspect and search without warrant, any person, boat, . . . where he has reason to believe that food fish or shellfish are kept for sale, barter, or other purpose, and which he has reason to believe contain evidence of violations of the fisheries code or of any rule, regulation, or order made by the director.

. . .

Any of the officers above named may at any time seize and take possession of any food fish or shellfish which has been unlawfully caught, taken, or killed or which is unlawfully possessed in violation of the provisions of the fisheries code or of any order, rule, or regulation made by the director and the same shall be confiscated to the state.

Subject to specified exceptions, warrantless invasions of privacy are deemed violative of the Fourth Amendment's proscription against unreasonable search and seizure. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). One of those recognized "exceptions" permits warrantless entry onto and inspection of a "pervasively regulated business." *United States v. Biswell,* 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972). Such warrantless

entries do not really constitute "exceptions" to the Fourth Amendment's requirement of a search warrant. Rather, the warrantless search is deemed to be outside the ambit of the Fourth Amendment's protection because "when an entrepreneur embarks upon such a business he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978).

The precise issue to be resolved in the case at bench, therefore, resolves itself into the question of whether or not the commercial gill net fishing industry in this state is the type of business so pervasively regulated that entrepreneurs engaged in that business have voluntarily chosen to subject themselves to warrantless entry upon their boats by fisheries inspectors who have reason to believe that food fish or shellfish are on board in violation of departmental regulations. Courts of several of our sister states have so held. *Paladini v. Superior Court*, 178 Cal. 369, 173 P. 588 (1918); *State v. Marconi*, 113 N.H. 426, 309 A.2d 505 (1973); *State v. Westside Fish Co.*, 31 Ore. App. 299, 570 P.2d 401 (1977).

We take cognizance of the fact that Washington's, no less than Oregon's, "fish runs are a precious natural and economic resource to the entire public for which vigorous governmental protection is essential." *State v. Westside Fish Co., supra.* Additionally, we note that commercial fishing in this jurisdiction has a long tradition of close regulation of fish runs necessitated in part, at least, by the transient nature of the enterprise and the disposable nature of the product. We conclude, therefore, that a commercial fisherman voluntarily chooses to engage in a pervasively regulated business which subjects him to the full arsenal of governmental intrusion.

The defendants, nevertheless, contend that RCW 75.08.170 is not an administrative search statute because it applies to unlicensed fishermen as well as to licensed ones. However, the defendants are without standing to make this facial attack upon the statute. They can only attack the

statute as it applies to them as licensed commercial fishermen. *United States v. Raines,* 362 U.S. 17, 4 L. Ed. 2d 524, 80 S. Ct. 519 (1960).

They also contend the statute is not an administrative search statute because its "reasonable belief" requirement makes it more analogous to a statute authorizing a search for the purpose of gathering evidence for criminal prosecution than to a statute authorizing a search to determine compliance with a regulation, citing *Michigan v. Tyler,* 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). The Washington statute does allow warrantless inspection of an area only

> where he [the fisheries officer] has *reason to believe* that food fish or shellfish are kept for sale, barter, or other purpose, and which he has *reason to believe* contain evidence of violations of the fisheries code or of any rule, regulation, or order made by the director.

(Italics ours.)

■ However, *Michigan v. Tyler, supra,* is distinguishable because it is addressed to administrative searches which normally do require warrants under the doctrine of *Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); it does not concern administrative searches which normally do not require warrants under the doctrine of *United States v. Biswell, supra.* For purposes of this opinion, we need not determine whether "probable cause" in the criminal law sense, necessary before a search and seizure can occur, differs from the "reason to believe" requirement of RCW 75.08.170. Although evidence obtained from the warrantless searches may be used in a state prosecution, the prosecution is not an end in itself but only one of the means of insuring compliance with the fisheries management program, by discouraging violations.

117

Judgment affirmed.

PEARSON, C.J., and REED, J., concur.